IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | |
|---|---|
| RICKEY GRIFFIN and LINDA GRIFFIN ) | |
| ) | |
| Plaintiffs, ) | |
| v. ) | Case No. 2:12-cv-196-WHA |
| ) | |
| CHARLES BEASLEY (as an individual and ) | (WO) |
| in his official capacity as a Police Officer ) | |
| of the City of Brunbridge, Alabama Police ) | |
| Department), and THE CITY OF ) | |
| BRUNBDIDGE (as a body politic and ) | |
| municipality of the State of Alabama). ) | |
| ) | |
| Defendants. ) | |

**MEMORANDUM OPINION AND ORDER**

**I. INTRODUCTION**

This case is before the court on a Motion to Dismiss and To Stay (Doc. #9), filed by Defendants Charles Beasley ("Beasley") and the City of Brundidge ("City"). The Plaintiffs, Rickey and Linda Griffin (collectively, "Plaintiffs"), filed a Complaint (Doc. #1) on March 2, 2012, raising the following fourteen causes of action: Count One – a Fourth Amendment unreasonable seizure claim pursuant to 42 U.S.C. § 1983 on behalf of both Plaintiffs against both Defendants; Counts Two, Three, and Four – three Fourth Amendment excessive force claims pursuant to 42 U.S.C. § 1983 on behalf of Rickey Griffin against Beasley; Counts Five, Six, and Seven – three state law assault and battery claims on behalf of Rickey Griffin against Beasley; Count Eight – a state law false imprisonment claim on behalf of Rickey Griffin against both Defendants; Counts Nine, Ten, and Eleven – three Fourteenth Amendment unreasonable seizure claims on behalf of Rickey Griffin against the City; and Counts Twelve, Thirteen, and Fourteen

– three state law assault and battery claims on behalf of Rickey Griffin against the City.

The Defendants now move for dismissal of the claims against them and raise various grounds in support of their contention.  The Plaintiffs filed a Response to the Defendants' Motion to Dismiss and to Stay (Doc. # 14) on May 14, 2012, and the Defendants filed a Reply to the Plaintiffs' Response on May 21, 2012. (Doc. # 15).

The court notes that in their Response, the Plaintiffs voluntarily dismissed the following: Counts Twelve, Thirteen, and Fourteen; Counts Nine, Ten, and Eleven in-so-much as those counts allege negligent hiring of Beasley; the claim for injunctive relief; any claim against Beasley in his official capacity that is duplicative of the claim against the City; and any claim for punitive damages against the City.

For reasons to be discussed, the Defendants' Motion is due to be GRANTED in part and DENIED in part.

## II.   MOTION TO DISMISS

The court accepts the plaintiff's factual allegations as true, *Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984), and construes the complaint in the plaintiff's favor, *Duke v. Cleland*, 5 F.3d 1399, 1402 (11th Cir. 1993).  In analyzing the sufficiency of pleading, the court is guided by a two-prong approach: one, the court is not bound to accept conclusory statements of the elements of a cause of action and, two, where there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to entitlement to relief.   See *Ashcroft v. Iqbal,*556 U.S. 662, 678-79 (2009).    "[A] plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."   *Bell Atlantic Corp.*

*v. Twombly*, 550 U.S. 544, 555 (2007). *Id.* (citation omitted). To survive a motion to dismiss, a complaint need not contain "detailed factual allegations," but instead the complaint must contain "only enough facts to state a claim to relief that is plausible on its face." *Id.* at 570. The factual allegations "must be enough to raise a right to relief above the speculative level." *Id.* at 555.

### III.  **FACTS**

The factual allegations from the Plaintiffs' Complaint are as follows:

In the early morning hours of March 4, 2010, Rickey Griffin was at his girlfriend Cynthia Jackson's ("Jackson") residence located in a trailer park in Brundidge, Alabama. Brundidge is located in Pike County and falls within the jurisdiction of the Brundidge Police Department. During his time at his girlfriend's residence, Rickey Griffin got into an argument with his girlfriend's son, Jamal Carson ("Carson"). Jackson stopped the argument after a few moments, and Carson left the residence. Rickey Griffin also left the residence, so he could use a neighbor's phone to call his sister Linda Griffin. He asked her to come pick him up from Jackson's residence, and then went back to Jackson's residence to wait for his sister.

While Rickey Griffin was waiting on Linda Griffin to arrive, Beasley, a Brundidge police officer, approached him and began yelling and screaming at him.[1] He threatened Rickey Griffin

---

[1] The Defendants attached a document to their Reply Brief (Doc. # 15-2) which they allege is a transcript of a call that the Brundidge Police Department received from Carson. The Defendants argue that the court should consider this document and argue that doing so will not convert the Motion to Dismiss into a Motion for Summary Judgment. In order to support their argument, the Defendants rely on *SFM Holdings, Ltd. v. Banc of America Securities, LLC*, 600 F.3d 1334 (11th Cir. 2010), which explained that "[i]n ruling upon a motion to dismiss, the district court may consider an extrinsic document if it is (1) central to the plaintiff's claim, and (2) its authenticity is not challenged." *Id.* at 1337. The court finds that the transcript of the phone call from Carson is not central to the Plaintiffs' claim, but is central, instead, to the Defendants' proposed defenses to liability. Accordingly, the court will not consider the contents of the Defendants' propose exhibits.

3

with arrest and a physical assault, and Rickey Griffin responded to these actions by informing Beasley that he had done nothing wrong. Linda Griffin arrived on the scene at this time.

Beasley then approached Rickey Griffin, shoved him, and sprayed mace into his eyes. While Rickey Griffin was suffering the effects of the mace, Beasley stepped back and discharged his firearm into Rickey Griffin's left arm. After shooting him, Beasley spent the next few moments beating Rickey Griffin and ended the beating by slamming Rickey Griffin into the hood of Linda Griffin's car. After slamming him in to the car hood, Beasley brandished his Glock 22 .40 caliber firearm and motioned as if he were about to strike Rickey Griffin's head with the gun. Next, he resumed beating Rickey Griffin until he dropped his firearm. Rickey Griffin picked up the firearm and returned it to Beasley after which Beasley slammed Rickey Griffin on the hood of the car again.

After slamming Rickey Griffin on the car for the second time, Beasley pointed his firearm at Rickey Griffin apparently to shoot him for a second time. At this time, Linda Griffin begged Beasley not to shoot her brother again, and, in response to her request, Beasley pointed his firearm at her instead. At this time, other residents in the trailer park came outside to investigate the disturbance, and other patrol units from the Brundidge Police Department arrived on the scene. After arriving, the other officers advised Beasley to lower his weapon, and one of the officers removed Beasley's firearm from him. Beasley told the officers that had responded to the scene that Rickey Griffin had assaulted him.

Paramedics subsequently arrived on the scene, and Rickey Griffin was rushed to the Troy Regional Medical Center in Troy, Alabama, to begin medical treatment. Due to the injuries that Rickey Griffin sustained after being shot by Beasley, he was immediately transported to the

4

Southeast Alabama Medical Center in Dothan, Alabama, for surgery on his arm. After being released from the hospital, Rickey Griffin was informed that there was an outstanding warrant for his arrest. He was charged with assault of a law enforcement officer based on a statement made by Beasley.

Lastly, the Plaintiffs allege that Beasley was not APOST certified and that he had been involved in other incidents in which he shot unarmed suspects. The Plaintiffs allege that the City knew about this and had not done anything to remedy his behavior.

## IV. DISCUSSION

### A. Claim-By-Claim Analysis

1. Count One – Unreasonable Seizure of Linda and Rickey Griffin by Defendants

The Defendants move the court to dismiss Count One of the Plaintiffs' Complaint for two reasons. The first, which applies to Beasley, is that the Plaintiffs' claim against Beasley is barred by qualified immunity, and the second, which applies to the City, is that the City cannot be held liable on a theory of respondeat superior. The court will address each reason in turn.

Because the Defendants have asserted qualified immunity in a Rule 12(b)(6) motion to dismiss, the court must determine if the Plaintiffs' complaint has sufficiently alleged a violation of a clearly established constitutional right. *Williams v. Alabama State University*, 102 F.3d 1179, 1182 (11th Cir. 1997). "Whether the . . . complaint alleges a violation of a clearly established right is a question of law." *Id.* (citing *Ansley v. Heinrich*, 925 F.2d 1339, 1348 (11th Cir. 1991)).

Qualified immunity is a protection designed to allow government officials to avoid the

expense and disruption of trial. *Ansley v. Heinrich*, 925 F.2d 1339, 1345 (11th Cir. 1991). As a preliminary matter, the court must determine whether the public official was acting within the scope of his discretionary authority at the time the allegedly wrongful acts occurred. *See Rich v. Dollar*, 841 F.2d 1558, 1563 (11th Cir. 1988). Once it is established that a defendant was acting within his discretionary authority, the court must determine whether "[t]aken in a light most favorable to the party asserting the injury, do the facts alleged show the officer's conduct violated a constitutional right?" *Saucier v. Katz*, 533 U.S. 194, 201 (2001). "[I]f a constitutional right would have been violated under the plaintiff's version of the facts," the court must then determine "whether the right was clearly established." *Wood v. Kesler* 323 F.3d 872, 878 (11th Cir. 2003).

Requiring that a constitutional right be clearly established means that liability only attaches if "[t]he contours of the right [violated are] sufficiently clear that a reasonable official would understand that what he is doing violates that right." *United States v. Lanier*, 520 U.S. 259, 270 (1997). In other words, a defendant is entitled to "fair warning" that his conduct deprived his victim of a constitutional right. *Hope v. Pelzer*, 536 U.S. 730, 741 (2002).

In *Vinyard v. Wilson*, 311 F.3d 1340, 1350–53 (11th Cir. 2002), the Eleventh Circuit articulated three ways in which individual state defendants can receive "fair notice" that their conduct violates clearly established law. First, the words of a federal statute or constitutional provision may be specific enough "to establish clearly the law applicable to particular conduct and circumstances and to overcome qualified immunity, <u>even in the total absence of case law</u>." *Id*. at 1350 (emphasis in original). The Eleventh Circuit considers a case falling into this category an "obvious clarity case." *Id.* at 1350.

Second, if the conduct at issue is not so egregious as to violate the Constitution or a federal statue on its face, the court must turn its attention to case law that espouses "broad statements of principle . . . that are not tied to particularized facts." *Id.* at 1351. In these types of cases, courts will declare "X Conduct" unconstitutional regardless of the specific factual situation. *Id.* "[P]ut differently, the precise facts surrounding 'X Conduct' are immaterial to the violation," thus these decisions can "clearly establish law applicable in the future to different sets of detailed facts." *Id.*

Third, courts must look to cases that tie a particular type of conduct to the specific facts of the case. *Id.* With these cases, courts must examine case law stating that "Y Conduct" is unconstitutional in "Z circumstances."[2] *Id.* If the circumstances facing the official are "materially similar" to those of the fact-specific case, this precedent can clearly establish the applicable law and qualified immunity will not be warranted. *Id.* at 1352.

In this circuit, the law can be "clearly established" for qualified immunity purposes only by decisions of the U.S. Supreme Court, Eleventh Circuit Court of Appeals, or when relevant the highest court of the state where the case arose. *Thomas ex rel. Thomas v. Roberts*, 323 F.3d 950, 953 (11th Cir. 2003).

In the present case, the issue of whether Beasley was acting within his discretionary authority is uncontested. Therefore, the court will limit its analysis as to qualified immunity in this opinion only to whether Beasley's conduct violated a constitutional right and whether that right was clearly established.

---

[2] The Eleventh Circuit noted that most case law will fall into this third category. *Vinyard*, 311 F.3d 1351–52.

"[A]n officer may, consistent with the Fourth Amendment, conduct a brief, investigatory stop when the officer has a reasonable, articulable suspicion that criminal activity is afoot." *Jackson v. Sauls*, 206 F.3d 1156, 1165 (11th Cir. 2000) (quoting *Illinois v. Wardlow*, 528 U.S. 119, 123 (2000)). To demonstrate a reasonable suspicion, Beasley need not meet the preponderance of the evidence standard but must still show "at least a minimal level of objective justification for making the stop." *Id*. (quoting *Wardlow*, 528 U.S. at 123). Also, Beasley need not demonstrate that reasonable suspicion actually existed, but rather, that "arguable" reasonable suspicion existed. *Id*. at 1166.

As to whether a seizure actually occurred in this case, it is clear that "whenever a police officer accosts an individual and restrains his freedom to walk away, he has 'seized' that person." *Terry v. Ohio*, 392 U.S. 1, 16 (1968). Moreover, when Beasley, as an officer, "by means of physical force or show of authority, has in some way restrained the liberty of a citizen [the court may] conclude that a 'seizure' has occurred." *Id.* at 19 n. 16.

Accepting the facts from the complaint as true, as the court must, Beasley is not entitled to qualified immunity at this stage in the litigation. Under the Plaintiffs' facts, Beasley arrived at the location where Rickey Griffin was waiting for his sister, Linda, to pick him up and began an unprovoked physical assault on Rickey Griffin, and, during that assault, took a moment to hold Linda Griffin at gunpoint to prevent her from moving.

It is clear to the court that a physical assault and a show of force, through the use a firearm, are the kinds of actions which the Fourth Amendment contemplated as a seizure. Moreover, it is clear that under this set of facts, Beasley cannot establish that he had even arguable reasonable suspicion, and therefore, his seizure was clearly unconstitutional. *See*

*Jackson*, 206 F.3d at 1166 (noting that a reasonable officer would know that in the absence of any arguable reasonable suspicion, that the stop of any individual violates clearly established law.). Accordingly, the Defendants' Motion to Dismiss as to Count One against Beasley is due to be denied.

As to the claim against the City pursuant to Count One, the Defendants' Motion to Dismiss is due to be granted. Count One bases the City's liability on a theory of *respondeat superior*. The Supreme Court has made it clear, however, that "a municipality may not be held liable under § 1983 solely because it employs a tortfeasor." *Bd. of Cnty. Comm'rs of Bryan Cnty., Okl. v. Brown*, 520 U.S. 397, 403 (1997). Because Count One relies solely on a theory of *respondeat superior*, it is due to be dismissed as to the City.[3]

2. <u>Counts Two, Three, and Four – Use of Excessive Force on Rickey Griffin by Beasley</u>

While the Defendants adamantly deny the allegations in the Complaint, they do not seek a dismissal of Counts Two, Three, and Four at this time. Accordingly, the Plaintiffs' case will continue as to those claims.

3. <u>Counts Five, Six, and Seven – State Law Assault and Battery of Rickey Griffin by Beasley</u>

While Defendant Beasley adamantly denies the allegations in the Complaint, he does not seek a dismissal of as to Counts Five, Six, and Seven at this time. Accordingly, the Plaintiffs'

---

[3] The court notes that the Plaintiffs argued in their brief that they meant to rely on a custom or policy theory of liability; however, the court is bound by the words of the Complaint. The Plaintiffs are free at an appropriate time to file an amended complaint with a properly pled theory of liability as required by Rule 8 of the Federal Rules of Civil Procedure.

case will continue as to those claims.

### 4. Count Eight – False Imprisonment of Rickey Griffin by both Defendants

As to Count Eight, the court notes that the contours of this claim are not clear.  Despite the claim being labeled and pled as false imprisonment, it appears from briefs that the Plaintiff may be attempting to raise both false imprisonment and false arrest claims against both Defendants.  Under Alabama law, these torts have different elements. *See Walker v. City of Huntsville*, 62 So.3d 474, 492 (Ala. 2010) (explaining that Alabama Code § 6-5-170 "defines false imprisonment as 'the unlawful detention of the person of another for any length of time whereby he is deprived of his personal liberty'"); *see also Higgins v. Wal–Mart Stores, Inc.*, 512 So.2d 766 (Ala. 1987) ("in a cause of action for false arrest, a plaintiff must prove that the defendant caused him to be arrested without probable cause"), overruled on other grounds, *Drill Parts & Serv. Co. v. Joy Mfg. Co.*, 619 So.2d 1280 (Ala. 1993).  Moreover, Count Eight appears to rely on facts that took place both at the trailer and at the hospital.  Accordingly, Count Eight could be read to plead as many as four different claims against the Defendants.

The Eleventh Circuit has endorsed the "principle that separate, discrete causes of action should be plead in separate counts." *Cesnik v. Edgewood Baptist Church*, 88 F.3d 902, 905 (11th Cir. 1996) (citing *Anderson v. Dist. Bd. of Trs. of Cent. Fla. Cmty. Coll.*, 77 F.3d 364, 366 (11th Cir. 1996).  Moreover, "[w]hen faced with a shotgun complaint, [the Eleventh Circuit has] encouraged defendants to make motions for more definite statements or courts to demand repleader . . . ." *Bailey v. Janssen Pharmaceutica, Inc.*, 288 F. App'x 597, 603 (11th Cir. 2008).  Given the fact that the Defendants in the present case have not moved for a more definite

statement, the court will, adhering to Eleventh Circuit precedent, require the Plaintiff replead the claims he intends to assert under Count Eight, bearing in mind the principle that discrete claims must be plead in separate counts. In the meantime, Count Eight is dismissed without prejudice.

5. Counts Nine, Ten, and Eleven – Rickey Griffin's Substantive Due Process Claims Against City

These three Counts are brought against the City pursuant to § 1983 and are based on alleged violations by the City of the Plaintiff's Fourteenth Amendment rights, committed at the trailer. The Defendant seeks dismissal of these Counts for two reasons. First, that the Supreme Court has explicitly stated that the use of excessive force by a police officer invokes the Fourth Amendment and not the Fourteenth Amendment's substantive due process guarantees. *See Graham v. Connor*, 490 U.S. 386, 396 (1989) ("Today we . . . hold that all claims that law enforcement officers have used excessive force—deadly or not—in the course of an arrest, investigatory stop, or other 'seizure' of a free citizen should be analyzed under the Fourth Amendment and its 'reasonableness' standard, rather than under a 'substantive due process' approach."). In the alternative, the Defendant argues that the City's municipal liability bars the Plaintiffs' claims.

The court agrees with the Defendant that the Plaintiffs' Fourteenth Amendment substantive due process theory is one for which the Plaintiffs' cannot obtain relief. In order to bring a claim against a municipality under § 1983, the plaintiff must demonstrate "(1) that his constitutional rights were violated; (2) that the municipality had a custom or policy that constituted deliberate indifference to that constitutional right; and (3) that the policy or custom caused the violation." *McDowell v. Brown*, 392 F.3d 1283, 1289 (11th Cir. 2004). The Plaintiffs

argue that the City violated their Fourteenth Amendment substantive due process rights, but as the Court explained in *Graham*, that is not the case. The Plaintiffs likely meant to bring a Fourth Amendment claim against the City as to its police officer's use of excessive force, but that is not what the Plaintiffs allege. Instead, the Plaintiffs erroneously rely on a Fourteenth Amendment substantive due process theory, and, accordingly, the Court must dismiss Plaintiffs' Counts Nine, Ten, and Eleven as to the training and supervision claims. The Plaintiffs may assert Fourth Amendment claims, if deemed appropriate, in an Amended Complaint.

## B. Motion to Stay

The Defendants have also petitioned the court to stay this proceeding until the conclusion of the criminal prosecution currently pending against Rickey Griffin. In support of this request, the Defendants raise three different arguments. First, the Defendants argue that once "a plaintiff files a false-arrest claim before he has been convicted (or files any other claim related to rulings that will likely be made in a pending or anticipated criminal trial), it is within the power of the district court, and in accord with common practice, to stay the civil action until the criminal case or the likelihood of a criminal case [ha]s ended." *Wallace v. Kato*, 549 U.S. 384, 393-94 (2007). Second, the Defendants argue that Alabama Code § 12-21-3.1, which limits the extent to which certain police investigatory documents may be discoverable, would prevent the Plaintiffs from obtaining certain testimony from Beasley. Lastly, the Defendants argue that the court, pursuant to the *Younger* abstention doctrine, should abstain from hearing the Plaintiffs civil case while his criminal case is still pending. The court will address each argument in turn.

As to the Defendants reliance on *Wallace*, the court finds that there is no evidence before it that any ruling it will make in the present civil suit will be made by the state court hearing the

criminal matter.  The Plaintiffs have explained in their brief that there will not be any overlap, and the only issue that the Defendants have articulated is that under Eleventh Circuit law a claim for excessive force during an illegal stop is "subsumed in the illegal stop or arrest claim and is not a discrete excessive force claim" while a claim for excessive force during a lawful stop is a discrete claim.  *Jackson v. Sauls*, 206 f.3d 1156, 1171 (11th Cir. 2000).  The Defendants argue that the Plaintiffs' claims are not clear in the absence of a determination as to whether Beasley's initial attempt to detain Rickey Griffin was legal, and the court infers from the Defendants' argument that the Defendants believe this determination is for the state court.  However, the Plaintiffs explain that these issues will not be resolved by the state court because they are not necessary to the determination of whether Rickey Griffin committed the crime of assault in the second degree.  Having considered both positions, the court finds the Defendants' argument unpersuasive because it is speculative.  The Defendants have not indicated any issue that is currently before the court which would likely be ruled on in the anticipated criminal trial, and the court will not speculate as to any such issues at this time.

As to Defendants' reliance on Alabama Code § 12-21-3.1, the court finds that this position is also speculative.  The Defendants have simply said that § 12-21-3.1 would prevent the Plaintiffs from being able to take Beasley's deposition and to see other relevant documents.  However, a plain reading of the statute makes it clear to the court that § 12-21-3.1 does not bar all testimony. *See* Ala. Code § 12-21-3.1(c).  As mentioned above, the court will not stay the case because of the speculative possibility that some of Beasley's testimony may not be discoverable by the Plaintiffs.

Lastly, the court finds that the Defendants' reliance on *Younger* and its progeny to be

misplaced.  "*Younger* abstention is the doctrine that federal courts should abstain from interfering with ongoing state criminal prosecutions." *Abusaid v. Hillsborough Cnty. Bd. Of Cnty. Com'rs*, 405 F.3d 1298, 1315 n. 9 (11th Cir. 2005).  The cases that the Defendants cite as analogous to the present case are too factually distinct to help their position.  For example, the present case is categorically different from one in which a federal court is petitioned to grant declaratory relief as to the validity of a statute when prosecution under that statute is currently pending in state court, *see Younger v. Harris*, 401 U.S. 37, 40-41 (1971), or one in which a state conviction has already taken place and a party petitions the court to provide them relief from the state court decision because of alleged constitutional right deprivations.  *See Doby v. Strength*, 758 F.2d 1405, 1406 (11th Cir. 1985).  Because the present suit will not require the court to interfere with any pending state litigation, the *Younger* abstention doctrine is inapplicable.

   Having found that none of Defendants' proffered reasons support a need for the court to stay the proceedings, the court denies the Defendants' Motion to Stay.

## V.  CONCLUSION

   For the foregoing reasons it is hereby ORDERED that

   1.  Defendants' Motion to Dismiss is GRANTED as to Counts Nine, Ten, and Eleven as to the negligent hiring claims against the City, and Counts Twelve, Thirteen, and Fourteen in their entirety, and these Counts are DISMISSED with prejudice to that extent.

   2.  Defendants' Motion to Dismiss is GRANTED as to Plaintiffs' claim for injunctive relief and for punitive damages against the City, and these claims are DISMISSED with prejudice.

3. Defendants' Motion to Dismiss is GRANTED as to claims against Beasley in his official capacity, and these claims are DISMISSED with prejudice.

4. Defendants' Motion to Dismiss is GRANTED as to Count One as to the City, Count 8 in its entirety, and Counts 9, 10, and 11 as to the failure to train and supervise claims against the City, and these claims are DISMISSED without prejudice.

5. Defendants' Motion to Stay is DENIED.

6. The Plaintiffs are given until **June 29, 2012** to file an Amended Complaint, which must comply in form to the requirements for amended pleadings set out in Local Rule 15.1.

Done this 19th day of June, 2012.

/s/ W. Harold Albritton
W. HAROLD ALBRITTON
SENIOR UNITED STATES DISTRICT JUDGE